181 N.J. Super. 79 (1981)
436 A.2d 573
STATE OF NEW JERSEY, PLAINTIFF,
v.
R.E.C., DEFENDANT.
Superior Court of New Jersey, Law Division Hunterdon County.
Decided August 21, 1981.
*80 Kevin R. Brotz, Assistant Prosecutor, for the State (William B. Palleria, Prosecutor, attorney).
William J. Caldwell, for defendant (Pisani & Caldwell, attorneys).
D'ANNUNZIO, J.S.C.
Petitioner was indicted for aggravated assault. Specifically, Indictment 134-J-79 charged that on November 19, 1979 he "did knowingly under circumstances manifesting extreme indifference to the value of human life point a firearm at or in the direction of [victim]." The alleged victim was an infant. A judgment of acquittal on a jury verdict of not guilty was *81 entered on June 17, 1980. An order expunging the record of this prosecution pursuant to N.J.S.A. 2C:52-1 et seq. is sought. The prosecutor has objected. The record upon which the court's decision is based consists of the verified petition for expungement, a supplemental petition for expungement, a statement in support of petition for expungement, the indictment and a judgment of acquittal, two affidavits of assistant prosecutor Campbell, both dated May 22, 1981, a written statement by petitioner consisting of 22 pages of single-spaced legal size paper (hereinafter referred to as petitioner's statement or narrative), and the record of the Trenton Psychiatric Hospital regarding petitioner's August 10, 1980 commitment. The matter has been submitted to the court on this record without testimony.
Prosecutor's objection is based upon the allegation that petitioner is mentally ill and dangerous and that the record of this prosecution should therefore be available to other law enforcement personnel with whom petitioner may become involved in the future.
N.J.S.A. 2C:52-6 authorizes the expungement of the records of prosecutions which have resulted in acquittals. However, the right to expungement is not absolute, even in the cases resulting in acquittal. N.J.S.A. 2C:52-14(b) provides that expungement shall be denied when "the need for the availability of the records outweighs the desirability of having a person freed from any disabilities as otherwise provided in this chapter." An application may be denied under this subsection only following objection of a party given notice pursuant to N.J.S.A. 2C:52-10, and "the burden of asserting such grounds shall be on the objector." The county prosecutor, as a person entitled to notice, has standing to object and to assert the applicability of subsection 14(b) as grounds for denial.
In ruling upon an expungement petition, it is the court's obligation to make specific factual findings, draw conclusions from those facts as to the establishment of criteria for granting or withholding expungement, and express the reasons *82 for the conclusions. See State v. King, 156 N.J. Super. 42 (App.Div. 1978), decided under N.J.S.A. 2A:85-15 et seq., the predecessor expungement statute. The State does not dispute that petitioner has made a prima facie showing of entitlement to expungement under N.J.S.A. 2C:52-6, 7 and 8(a). The sole disputed issue is the applicability of N.J.S.A. 2C:52-14(b), i.e., whether the need for the record outweighs the purpose of expungement. The burden of establishing the factual foundation for the applicability of that subsection to deny expungement rests with the prosecutor as objector. Although the expungement chapter is silent as to the standard of proof to be applied, the Code of Criminal Justice generally requires at least a preponderance of the evidence standard when dealing with matters other than the establishment of the elements of a crime. See N.J.S.A. 2C:1-13(f), requiring preponderance of the evidence in civil actions commenced pursuant to 2C; N.J.S.A. 2C:2-6(e)(3), requiring defendant to prove termination of complicity by a preponderance of the evidence; N.J.S.A. 2C:2-12(b), requiring establishment of entrapment by a preponderance of the evidence; N.J.S.A. 2C:4-1, establishment of insanity by a preponderance; N.J.S.A. 2C:5-1(d), renunciation of criminal purpose in an attempt prosecution to be established by preponderance, and N.J.S.A. 2C:5-2(e), requiring renunciation of criminal purpose is a conspiracy prosecution to be established by a preponderance. Two sections of the Code establish a standard of "to the satisfaction of the court": N.J.S.A. 2C:1-13(d), application of the Code dependent upon the finding of a fact, and N.J.S.A. 2C:4-11, burden of prosecution to establish that defendant not a juvenile. Logically it would appear that for a fact to be established "to the satisfaction of the court" there would be at least a preponderance of evidence in support of that fact. That is the position taken in the New Jersey Penal Code, vol. II: Commentary, "Final Report of the New Jersey Criminal Law Revision Commission," 37 which states:
The standard of proof ... i.e., that the fact "be established to the satisfaction" of the tribunal, is intentionally ambiguous. It means at least proof by a *83 preponderance of the evidence but beyond that the issue is left to the courts. The variety of situations requires flexibility.
The court has found no proof burden established by the Code which is less onerous than the preponderance standard.
To deny expungement the prosecutor must establish facts from which the court can conclude that the 14(b) criteria have been established. The prosecutor must establish the facts by a preponderance of the evidence. However, since denial of expungement in the context of an acquittal would constitute an unusual exercise of judicial power, the facts established should clearly convince the court that the need for the availability of the records outweighs the desirable effects of expungement.
On August 10, 1980, petitioner was committed to Trenton Psychiatric Hospital by a municipal court judge. He was discharged on September 17, 1980. According to the hospital records, the discharge was also by court order. The hospital's provisional and final diagnosis was schizophrenia, paranoid type. Although it is not entirely clear, there are references in the hospital record which indicate that the municipal court commitment resulted from a confrontation between petitioner and other members of his family in which petitioner wielded a loaded firearm. There are other references in the hospital record that could lead to an inference that petitioner is dangerous. A psychological evaluation report dated August 12 noted the psychologist's concern that petitioner "may well begin to act out" and "that this acting out might well be dangerous."
Petitioner's 22-page, hand-written statement, referred to by the prosecutor as petitioner's "letter to the F.B.I.," is corroborative of the information in the hospital's record. It reveals the author as a rather disturbed and pathetic individual.
The prosecutor has established by a preponderance of evidence that the petitioner is mentally ill.
The prosecutor's argument against expungement is best expressed by this quotation from his letter memorandum to the court:

*84 Based on the information contained in [R.E.C.'s] psychological records, his letter to the F.B.I., and the information in Ms. Campbell's affidavits (including his possible violation of gun laws at present), it appears very likely that [R.E.C.] will come in contact with law enforcement officials in the future in some type of situation. When that situation arises, law enforcement officials will have to make a judgment as to what action to take with regard to [R.E.C.'s] behavior. That law enforcement official may be a police officer on the street or a prosecutor exercising his prosecutorial discretion in considering how to proceed with a potential criminal matter involving [R.E.C.]. In either case, these officials should have the benefit of knowing the circumstances surrounding the Grand Jury Indictment of [R.E.C.] for dangerous conduct involving the use of a weapon. Since the Petit Jury returned a verdict of not guilty, they were not convinced beyond a reasonable doubt that he was guilty. However, there clearly was some evidence to support the charge, and law enforcement officials should have the benefit of this information (in addition to the information on his unusual behavior) should they run into [R.E.C.] in the future....
The prosecutor's argument is flawed. The purpose of expungement is to eradicate the stigma of a record of arrest and prosecution where the defendant has been acquitted and therefore found not guilty of having committed a crime. The prosecutor's argument can be made with regard to anyone who has been unsuccessfully prosecuted. The argument is equivalent to the proposition that defendant really was guilty of the crime charged, that the prosecutor and grand jury know he was guilty and that law enforcement officials who may come into contact with defendant in the future will also know it and will act accordingly. Acceptance of this proposition would ignore the petit jury's not guilty verdict and would disregard the legislative purpose of expungement.
Even if defendant had a record of prior criminal conviction, which he does not, that fact alone would not preclude expungement. The Legislature clearly intended that persons acquitted have a right to expungement despite a history of criminal activity. This legislative intent is demonstrated by N.J.S.A. 2C:52-14(e) which requires denial of expungement where petitioner has had a previous criminal conviction expunged unless the expungement sought is of records of a prosecution which resulted in acquittal.
*85 Prosecutor also argues that petitioner, who had been a police officer, may again attempt to seek employment with a law enforcement agency. In evaluating the petitioner's application, such law enforcement agency should have the benefit of knowing petitioner's criminal record. Prosecutor further argues that although N.J.S.A. 2C:52-27(c) requires the petitioner to divulge his prior expunged record when seeking employment with a law enforcement agency, petitioner cannot be relied upon to volunteer such information. Again, that argument can be made as to anyone who seeks to expunge a record of a conviction or an acquittal. Furthermore, it is likely that the expunged record would be available to any prospective law enforcement employer. Records which are expunged are not destroyed. Under N.J.S.A. 2C:52-15 they are placed within the control of a particular person designated by the agency processing the records. The responsibility of that designated person is to prevent the release of those records or the information contained in those records "except as otherwise provided in this chapter." N.J.S.A. 2C:52-17 through 23 authorize the release and use of expunged records for certain specified purposes. Although those seven sections do not expressly authorize the release of expunged records, or even an acknowledgement that they exist, in response to an inquiry by a law enforcement agency evaluating an employment application, release and use of expunged records for that purpose are certainly implied by N.J.S.A. 2C:52-27(c). As previously referred to, that section requires a person seeking employment with a law enforcement agency to divulge expunged information. It would be unlikely that the Legislature intended that a law enforcement agency lacked the legal capacity to verify an employment application on which an applicant denied a prior criminal record.
Neither of the prosecutor's arguments is persuasive. It appears that the value of maintaining the availability of the record of petitioner's arrest lies not in the fact that he was prosecuted or in the facts underlying the particular prosecution, but rather its value is in identifying the Hunterdon County *86 Prosecutor's office as a source of information about the petitioner's mental illness. The issue, then, is whether fulfillment of that purpose constitutes a legitimate "need for the availability of the record" which "outweighs the desirability of having a person freed from any disabilities...." N.J.S.A. 2C:52-14(b). This section requires an evaluation of the need for the availability of the record of the prosecution sought to be expunged. There is nothing before me to establish that the record of the prosecution resulting in Indictment 134-J-79 contains an adjudication or diagnosis of mental illness or information which in and of itself would support such a diagnosis. Petitioner's 22 page narrative and the hospital record are extraneous to that prosecution. Petitioner was not committed to the hospital until August 1980, two months after his acquittal. The narrative is undated but clearly is not related to the prosecution. To deny expungement solely to enable an identified law enforcement agency to provide information extraneous to the prosecution is beyond the legislative authority granted in N.J.S.A. 2C:52-14(b). By the same token, that information i.e., the narrative and the hospital record would not be affected by expungement of the record of the prosecution.
It should also be noted that this case is not analogous to acquittal by reason of insanity. N.J.S.A. 2C:52-6(c) bars expungement where the acquittal or dismissal resulted from a determination of insanity or lack of mental capacity. Those circumstances presuppose that a crime was actually committed. In this case, petitioner was found not to have committed the crime charged.
This decision should not be construed as holding that expungement can never be denied in an acquittal context. There may be cases of acquittal where the need for availability of the records outweighs the policy behind expungement. For example, in an organized crime context the record of an unsuccessful prosecution may include significant information pertinent to other prior or continuing criminal activity of the acquitted *87 defendant and other persons. Obviously each case must be decided on its particular facts.
Plaintiff's attorney shall prepare an expungement order.